UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY PASSMORE,

          Plaintiff,          Case Number 24-11757

v.          Honorable David M. Lawson
          Magistrate Judge Curtis Ivy, Jr.

FIDELITY BROKERAGE SERVICES, LLC,
BERKSHIRE HATHAWAY SPECIALTY
INSURANCE, and FEDERAL INSURANCE
COMPANY,

          Defendants.
_____/

**OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION, OVERRULING PLAINTIFF'S OBJECTIONS, GRANTING CERTAIN DEFENDANTS' MOTION TO DISMISS, GRANTING DEFENDANT FIDELITY INVESTMENT'S MOTION TO COMPEL ARBITRATION, DIRECTING ENTRY OF PARTIAL FINAL JUDGMENT, AND ADMINISTRATIVELY CLOSING CASE**

Anthony Passmore filed a complaint, later amended, against his financial services provider, defendant Fidelity Brokerage Services, alleging that it misappropriated funds and engaged in a series of events that caused him emotional and financial harm. Passmore also filed a direct action against Fidelity's insurers, defendants Berkshire Hathaway Specialty Insurance Company and Federal Insurance Company, alleging that they "aided" Fidelity and "are responsible for the contracts written and the agents within their umbrella." The defendants removed the case from state court. Passmore is proceeding without an attorney. The Court referred the case to Magistrate Judge Curtis Ivy, Jr. to conduct pretrial proceedings. Thereafter, the insurance company defendants filed a joint motion to dismiss, and Fidelity filed a motion to compel arbitration. Judge Ivy filed a report recommending that both motions be granted. The plaintiff filed timely objections, and the case is before the Court for fresh review of the issues raised by the motions and objections.

I.

Passmore filed this case in the Wayne County, Michigan circuit court on June 6, 2024. He filed an amended complaint after the defendants removed the case to this Court. The complaint names as defendants Fidelity Brokerage Services, LLC, Berkshire Hathaway Specialty Insurance, and Federal Insurance Company.

As Judge Ivy aptly observed in his report, the plaintiff's factual allegations are "sparse." ECF No. 21, PageID.337. In full, the plaintiff's amended complaint describes his claims as follows:

> Fidelity Brokerage Services LLC engaged into an [sic] series of intentional events to intentionally inflict harm and injury to Plaintiff both emotionally and financially. Those events included but not limited were:
> Denial of arbitration
> Violating broker-dealer's resposibility [sic] to treat customers fairly
> Misappropriated funds
> Discrimination regarding species of acceptable forms of tender.
> Berkshire Hathaway Specialty Insurance and Federal Insurance Company aided and abided [sic] and are responsible for the contracts written and the agents within their umbrella.

Am. Compl., ECF No. 11. He seeks $10 million in damages. *Ibid.*

Although the amended complaint supersedes the original filing, *In re Refrigerant Compressors Antitrust Litig.*, 731 F.3d 586, 589 (6th Cir. 2013) (citing *Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc.*, 555 U.S. 438, 456 n.4 (2009)), additional context may be found in the plaintiff's original complaint. There, Passmore alleged that he presented a check to Fidelity in April of 2024 that was "dishonored." ECF No. 1-1, PageID.11. The check was made out to the United States Treasury for a negative sum and sought a credit to his Fidelity account. *Id.* at PageID.18. After Fidelity refused to honor that "check," he sent Fidelity a "Notice of Protest" on May 2, 2024. *Id.* at PageID.11. And when Fidelity did not respond, he sent another document, styled as a "Notice and Affect [sic] of Failure to Respond," which again allegedly went

unanswered. *Ibid.* Passmore then presented "claims" based on Fidelity's alleged "violations" to the two insurance company defendants, which were denied. *Id.* at PageID.12-13.

On August 7, 2024, defendants Berkshire Hathaway and Federal filed a joint motion to dismiss the plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) and defendant Fidelity Brokerage Services, LLC filed a motion to compel arbitration. The insurance company defendants attached to their motion copies of a primary insurance policy and an excess policy they issued to Fidelity. *See* ECF Nos. 14-1, 14-2. Fidelity attached to its motion copies of the customer agreements containing arbitration provisions signed by Passmore when he opened his two accounts in 2004 and 2011; Passmore does not dispute signing these agreements. *See* Declaration of Tonya Ward, ECF No. ECF No. 15-1, PageID.253; Plf's Resp. to MTD, ECF No. 18, PageID.309 ("Both Plaintiff and Defendant acknowledge the arbitration agreement . . . . There is no dispute in this regards [sic].").

Judge Ivy recommended granting both motions. Analyzing first the insurance company defendants' motion to dismiss, he held that the plaintiff was merely an incidental beneficiary of Fidelity's insurance contracts and therefore did not have "standing" to assert rights under the policies. Judge Ivy also recommended that the Court grant Fidelity's motion to compel arbitration because the arbitration agreement indisputably governed. He rejected the plaintiff's contention that Fidelity waived its right to arbitration by failing to respond to his mailed "notices" because those documents did not reference the arbitration clause, and the agreements contain provisions forbidding amendments except in a writing by an authorized Fidelity representative. As there was no other indication that the arbitration agreement was invalid or did not apply to the plaintiff's claims, he concluded that the Court should compel arbitration and stay the case.

Passmore filed two documents styled as objections to the Report and Recommendation. Collectively, these documents contained five objections. He also filed a document titled "Addendum to the Objections to the Report and Recommendation," which largely reiterates previous objections and does not appear to raise any grounds not raised in his prior filings. The defendants each responded to Passmore's objections. After the defendants filed their responses, Passmore filed three additional documents. These filings largely reiterate points already made and do not add substantively to his other objections.

II.

When a party files timely objections to a report and recommendation, the court must "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(2), (3) (requiring court review of "any part of the magistrate judge's disposition *that has been properly objected to*") (emphasis added); *United States v. Raddatz*, 447 U.S. 667 (1980); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). This fresh review requires the court to re-examine all of the relevant evidence previously reviewed by the magistrate judge in order to determine whether the recommendation should be accepted, rejected, or modified in whole or in part. 28 U.S.C. § 636(b)(1).

But this review is not plenary. "The filing of objections provides the district court with the opportunity to consider the specific contentions of the parties and to correct any errors immediately," *Walters*, 638 F.2d at 950, enabling the court "to focus attention on those issues — factual and legal — that are at the heart of the parties' dispute," *Thomas v. Arn*, 474 U.S. 140, 147 (1985). As a result, "[o]nly those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others

will not preserve all the objections a party may have." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006) (quoting *Smith v. Detroit Fed'n of Tchrs. Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987)).

Objections to a magistrate's report and recommendation must be "specific in order to focus the busy district court's attention on only those issues that were dispositive and contentious." *Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Parties may not raise new claims or theories not raised previously. *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000) (explaining that the Magistrate Judges Act does not permit "parties to raise at the district court stage new arguments or issues that were not presented to the magistrate").

### A. Justiciability

Before turning to Passmore's objections, a word about subject matter jurisdiction is in order. In a footnote in his report, the magistrate judge acknowledged the insurance company defendants' argument that Passmore does not have standing to sue under the insurance contracts, but he says that they did not raise that point as a jurisdictional issue. R&R at 8 n.2, ECF No. 21, PageID.344. He then suggested that Passmore lacks Article III standing because he did not allege an injury traceable to the insurance defendants' conduct. *Ibid.* That analysis misses the mark because it confounds standing to sue under a particular contract — a merits issue — with constitutional standing — a jurisdictional issue.

Starting with subject matter jurisdiction — which federal courts always must consider even if a party does not raise the question, *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) — a plaintiff must have "standing" to sue in a constitutional sense by pleading facts that demonstrate that he has suffered an actual or imminent, concrete and particularized injury; that the injury is fairly traceable to the conduct of the defendants; and that a favorable judicial decision likely would

offer relief, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). The magistrate judge found Passmore's complaint wanting because he believed that Passmore was not an intended beneficiary of the insurance policies, and therefore he could not trace his alleged injuries to any policy breach by the insurers. But "traceability requires that a plaintiff's claimed injury flow from the defendant's conduct rather than the plaintiff's own actions or the actions of a third party." *Grow Michigan, LLC v. LT Lender, LLC*, 50 F.4th 587, 592 (6th Cir. 2022). "At the pleading stage, the plaintiff's burden of alleging that their injury is fairly traceable to the defendant's challenged conduct is relatively modest." *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 866 (6th Cir. 2020) (cleaned up). Passmore's complaint sufficiently alleges traceability. An economic injury can be caused by an insurer's refusal to pay a claim, and a court could redress that injury. Whether the plaintiff is legally entitled to obtain relief here is another question.

That leads us to contractual "standing," a term occasionally employed by Michigan courts to address a person's legal right to relief under a particular contract as a party or beneficiary. *E.g.*, *Pontiac Sch. Dist. v. Travelers Indem. Co.*, No. 347614, 2020 WL 5261296, at *3 (Mich. Ct. App. Sept. 3, 2020) ("[T]o have standing to sue under the policy, the district was required to prove it was a third-party beneficiary of the contract."); *Bayagich v. Twp. of Rose*, No. 298466, 2011 WL 5374899, at *2 (Mich. Ct. App. Nov. 8, 2011) ("Incidental beneficiaries do not have standing to sue for breach of contract."). In that context, "standing" is a merits issue. *See Slorp v. Lerner, Sampson & Rothfuss*, 587 F. App'x 249, 254 (6th Cir. 2014) (distinguishing Article III standing from state law "standing" under the law of contracts and indicating that the latter "is assessed in conjunction with the merits of the claim"); *see also Diebold Inc. v. QSI, Inc.*, No. 16-02481, 2017 WL 3219866, at *6 (N.D. Ohio July 28, 2017) (holding that third-party beneficiary issue should be decided on the merits rather than via a motion under Rule 12(b)(1)); *B. & V. Distrib. Co. v.*

*Dottore Companies, LLC*, 278 F. App'x 480, 487-88 (6th Cir. 2008) ("distinguishing between standing "in the constitutional sense" and "'standing'—*i.e.,* a right to an individual recovery—under the state law that governs . . . ."). Passmore appears to allege both contractual and tort claims against the insurance companies. He has alleged the requisites for Article III standing, and the Court has subject matter jurisdiction to address the merits of his claims.

B. First Objection

In his first objection, Passmore contends that two customer agreements governing his relationship with Fidelity contain provisions that make his "notices" effective to revoke the arbitration clauses. He latches onto language that appears in one of the agreements stating, "I acknowledge that this authorization may only be revoked by providing written notice of revocation to Fidelity in such time and manner as afford Fidelity and the Bank a reasonable opportunity to act upon it." ECF No. 22, PageID.352. Fidelity responds that the language cited by Passmore allows him to revoke only authorization for certain banking access and margin provisions of the contract, not to rescind the arbitration clauses or the contract as a whole.

Fidelity is correct. The language Passmore cites appears among several bullet points above the signature page of his first application to open the Fidelity account and is dated December 9, 2004. In full, it states:

> I hereby authorize Fidelity upon receiving instructions from me, to make payments of amounts representing redemptions by me or distributions payable to me by initiating credit or debit entries to the bank account (Bank) indicated on the attached "voided" check. I authorize and request the Bank to accept such entries from Fidelity, and to credit or debit, as indicated, my amount at the Bank in accordance with these entries. I understand that Fidelity will not be liable for any loss, expense, or cost arising out of my instructions provided that it institutes reasonable procedures to prevent unauthorized transactions. *I acknowledge that this authorization may only be revoked by providing written notice of revocation to Fidelity in such time and manner as afford Fidelity and the Bank a reasonable opportunity to act upon it.*

ECF No. 15-1, PageID.262 (emphasis added).  Passmore also cites a provision slightly later in the agreement that he says burnishes his argument that he may revoke the contract by mail:

> The following clause referring to lending of securities applies only to those accounts eligible and approved for margin.  I understand that UGMA/UTMA, estate, and other non-trust fiduciary accounts cannot use margin.  I hereby authorize Fidelity to lend, hypothecate, or rehypothecate, separately, or with the property of others, either to yourselves or to others, any property you may be carrying for me on margin.  *This authorization applies to all my accounts you carry and shall remain in force until you receive written notice of revocation at your main office in Boston, MA.*

*Ibid.* (emphasis added).

Fidelity emphasizes that the termination provisions of the whole agreement are governed by the more fulsome provisions set forth below:

> **16. Termination of Account**
>
> My account may be terminated by me or Fidelity at any time.  This agreement will remain in effect until its termination is acknowledged in writing by an authorized representative of FBS.
>
> . . .
>
> **17. Modification of Customer Agreement**
>
> No provision of this agreement can be amended or waived except in writing by an authorized representative of FBS.  If any provision of this agreement becomes inconsistent with any present or future law or regulation of any entity having regulatory jurisdiction over it, that provision will be superseded or amended to conform with such law or regulation, but the remainder of this agreement remains in force and effect.
>
> . . . .

ECF No. 15-1, PageID.277.  The customer agreement associated with Passmore's 2011 account application includes similar language.  *Id.* at PageID.297.  Fidelity points out that both agreements also include pre-dispute arbitration clauses stating that "all controversies that may arise between [the parties] (including but not limited to controversies concerning this or any other account maintained with you), whether arising before, on or after the date this account is opened,

shall be determined by arbitration . . . ." *Id.* at 277; *see also id.* at PageID.301 (similar provision in 2011 application). Both contracts also include choice of law provisions stating that Massachusetts law governs. *Id.* at PageID.279, 297.

Passmore's suggestion that the provisions he cites allow him to revoke the agreements' arbitration clauses by sending a "Notice of Protest" to Fidelity is unavailing. It is well settled that "'arbitration is a matter of contract,' meaning 'courts must "rigorously enforce" arbitration agreements according to their terms.'" *In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873, 878 (6th Cir. 2021) (quoting *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013)). To determine whether to compel arbitration under the Federal Arbitration Act, a court must "engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003). The Court's review of an arbitration provision is governed by the applicable state contract law. *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996).

Here, the customer agreements state plainly that they are to be interpreted under Massachusetts law. ECF No. 15-1, PageID.279, 297. Michigan courts generally enforce such choice-of-law provisions, *see Turcheck v. Amerifund Fin., Inc.*, 272 Mich. App. 341, 346, 725 N.W.2d 684, 688 (2006), and there is no reason not to do so here. Therefore, the Court must consider the validity of the contract under Massachusetts law.

The Massachusetts Supreme Judicial Court has explained that in the context of standard form non-negotiable contracts, characteristic of the contracts signed by the plaintiff here, "there must be both notice of the terms of the contractual offer and a reasonable manifestation of assent

to those terms so as to constitute acceptance of the offer." *Good v. Uber Techs., Inc.*, 494 Mass. 116, 126, 234 N.E.3d 262, 274 (2024) (cleaned up).

Passmore does not develop an argument that the customer agreements he signed with Fidelity were invalid as contracts. Rather, he maintains that certain provisions permitted him to withdraw his consent to arbitrate at any time. But Fidelity's account agreements cannot be interpreted that way. Under familiar contract interpretation maxims applied by Massachusetts and many other states, the interpretation of a contract is a question of law for the Court. *Balles v. Babcock Power, Inc.*, 476 Mass. 565, 571, 70 N.E.3d 905, 911 (2017). And "[w]hen the words of a contract are clear they alone determine the meaning of the contract . . . ." *Merrimack Valley Nat'l Bank v. Baird*, 372 Mass. 721, 723, 363 N.E.2d 688, 723 (1977). The rule for interpreting adhesion contracts, like the one here, varies slightly: the court must give effect "not [to] the actual intentions of the parties in each transaction, but instead [to] the meaning an objectively reasonable person in the nondrafting party's position would give to the language in the contract." *James B. Nutter & Co. v. Est. of Murphy*, 478 Mass. 664, 669-70, 88 N.E.3d 1133, 1139 (2018). And for contracts of all types, the instrument must be construed as a whole, so as "to give reasonable effect to each of its provisions." *J.A. Sullivan Corp. v. Commonwealth*, 397 Mass. 789, 795, 494 N.E.2d 374, 795 (1986).

Passmore's narrow focus on certain discrete provisions to justify his strategy of modification by "Notice of Protest" is at odds with the plain language of the contract. The immediate context of the provisions he cites makes clear that they provide a procedure for him to revoke authorization for Fidelity to interface directly with his bank. *See* ECF No. 15-1, PageID.262. Notably, the revocation language refers specifically to "this authorization" — that is, the banking access authority — not to any other contract provisions. Moreover, the customer

agreements here include specific provisions prescribing how the entire contract may be modified, which do not contain language confining the procedure only to certain provisions.  *See* Contract, ECF No. 15-1, PageID.277.  To the contrary, they state that "*[n]o provision* of this agreement can be amended or waived except in writing by an authorized representative of FBS." *Ibid*. (emphasis added).  It would be an odd result if the provision Passmore cites permitted him to modify aspects of the agreement in a different manner, and he does not argue that Fidelity ever provided him written confirmation that the arbitration provision was waived.  There is simply no basis to interpret the parties' agreement as Passmore suggests.  Because Passmore has articulated no other grounds to avoid the effect of the arbitration clauses with respect to his claims against Fidelity, Passmore's objection to the recommendation to grant the motion to compel arbitration will be overruled.

C.  Second Objection

Passmore's next objection is somewhat difficult to understand, but it appears that he believes that Michigan law provides a procedure for him to invalidate his contract or prove fraud via a "Notice of Protest."  He also appears to argue that his contract with Fidelity is not enforceable because it "involves criminal activity."  ECF No. 22, PageID.355.  Taking the second argument first, it is true that under Massachusetts law, "a contract in violation of law or public policy will not be enforced." *McLaughlin v. Amirsaleh*, 65 Mass. App. Ct. 873, 880-81, 844 N.E.2d 1105, 1111 (2006), and that a contract "is voidable by a party who is fraudulently induced to enter into it," *Green v. Harvard Vanguard Med. Assocs., Inc.*, 79 Mass. App. Ct. 1, 11, 944 N.E.2d 184, 193 (2011).  However, Passmore does not plead any facts suggesting either that the subject matter of the contracts itself is illegal or that Fidelity somehow fraudulently induced him to enter the

agreements. Instead, his concern seems to focus on Fidelity's actions after the contracts already had been formed, namely its failure to honor his check.

Turning to Passmore's statutory argument, the provision he cites is found in the Michigan Penal Code chapter criminalizing insufficient funds checks. *See* Mich. Comp. Laws § 750.131, *et seq*. He points to section 133, which states:

> Where such check, draft or order is protested, on the ground of insufficiency of funds or credit, the notice of protest thereof shall be admissible as proof of presentation, non-payment and protest, and shall be prima facie evidence of intent to defraud, and of knowledge of insufficient funds or credit with such bank or other depository.

Mich. Comp. Laws § 750.133.

This provision creates an evidentiary presumption of a defendant's criminal intent for the check insufficiency statute based on that individual's receipt of a notice informing him that payment was not made on their check. It does not, as the plaintiff would have it, mean that his choice to mail Fidelity his own "notice of protest" serves as proof of its fraud in this civil action. The plaintiff does not plead any facts suggesting Fidelity somehow gave him a bad check (the act criminalized by the statute), and the statute does not contain any indication that it may be enforced by a private party or applies in civil cases. *See Claire–Ann Co. v. Christenson & Christenson, Inc.*, 223 Mich. App. 25, 30-31, 566 N.W.2d 4, 6 (1997) ("[W]here a statute creates a new right or imposes a new duty unknown to the common law and provides a comprehensive administrative or other enforcement mechanism or otherwise entrusts the responsibility for upholding the law to a public officer, a private right of action will not be inferred."). In any event, whether Fidelity committed fraud by dishonoring Passmore's check is not a question that affects the enforceability of the arbitration provisions in the agreements.

Passmore's second objection to the report and recommendation will be overruled.

D.  Third, Fourth, and Fifth Objections

Passmore's third, fourth, and fifth objections all take issue with Judge Ivy's recommendation that the Court grant the insurance company defendants' motions to dismiss. Construed collectively, all of his objections seem to posit that Judge Ivy was incorrect to conclude that Passmore lacked standing to bring claims against the insurance companies because the substance of his claims is based on his allegations that the companies committed certain crimes and aided and abetted Fidelity's own alleged unlawful conduct.

The magistrate judge's main premise supporting his recommendation to dismiss the claims against the insurance companies is that Passmore has no enforceable right under the insurance contracts because he was not a party to them, and he was not an intended beneficiary. That conclusion is unassailable. The insurance companies insured Fidelity against liability and damages to third parties. Their agreements were with Fidelity, not with any person who might sue Fidelity for tortious conduct or breach of contract. Judge Ivy cited *Shathaia v. Travelers Casualty Insurance Company of America*, 984 F. Supp. 2d 714 (E.D. Mich. 2014), for the proposition that an insurer's contractual "obligations run to the insured alone," *id.* at 722, and that proposition cannot be gainsaid. Under Michigan law, direct actions against an insurer for the torts of its insured are prohibited. Mich. Comp. Laws § 500.3030 (stating that in an "action brought by the injured person . . ., the insurer shall not be made or joined as a party defendant . . . .").

Passmore, however, says that his amended complaint pleads something more. One of his theories is that Federal Insurance Company is responsible for Fidelity's conduct because Federal is Fidelity's parent company. But, as the magistrate judge pointed out, there are no facts supporting such a relationship.

Another theory suggested by Passmore is that his amended complaint should be construed to focus on the insurance companies' own torts rather than to allege a breach of contract due to their failure to pay an insurance claim. However, the allegations are insufficient to survive a motion to dismiss. Recall that a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A "claim is facially plausible when a plaintiff 'pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Matthew N. Fulton, DDS, P.C. v. Enclarity, Inc.*, 907 F.3d 948, 951-52 (6th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). Passmore's objections, perhaps, could clarify his pleadings. They are infused with allegations that Fidelity and the insurance defendants were involved in some sort of fraudulent scheme, but this only magnifies the problem. Under Civil Rule 9(b), Passmore was obligated to "state with particularity the circumstances constituting" the fraud. Fed. R. Civ. P. 9(b). This means that the complaint must "specify the 'who, what, when, where, and how' of the alleged fraud." *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006) (citation omitted). These questions all are left unanswered. And it is not clear how Fidelity's refusal to honor a check for a negative sum plausibly constitutes a fraud. Even with a liberal construction, it is difficult to make out any claims. In fact, after reviewing *all* of the documents in this case, the Court is unable to ascertain the precise nature of the plaintiff's grievance with Fidelity or the insurance company defendants. Therefore, even if the plaintiff's theory of recovery was not based on the insurance policies, he has failed to plead viable claims against the defendants.

Passmore's remaining objections, therefore, will be overruled.

### E. Final Judgment

Civil Rule 54(b) states that "[w]hen an action presents more than one claim for relief . . ., the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b). Certification under this rule requires two separate findings. *In Re Fifth Third Early Access Cash Advance Litig.*, 925 F.3d 265, 273 (6th Cir. 2019) (citing *Gen. Acquisition, Inc. v. GenCorp., Inc.*, 23 F.3d 1022, 1026 (6th Cir. 1994)). "First, the district court must expressly direct the entry of final judgment as to one or more but fewer than all the claims or parties in a case. Second, the district court must expressly determine that there is no just reason to delay appellate review." *Ibid.* (quoting *Gen. Acquisition*, 23 F.3d at 1026) (cleaned up). The Court also must explain how it "concluded that immediate review of the challenged ruling is desirable." *Gen. Acquisition*, 23 F.3d at 1026 (citing *Solomon v. Aetna Life Ins. Co.*, 782 F.2d 58, 60 (6th Cir. 1986)).

Here, the Court will direct entry of final judgment of dismissal against the plaintiff on his claims against Berkshire Hathaway Specialty Insurance Company and Federal Insurance Company. The claims against those defendants are not dependent on Passmore's dispute with his brokerage dealer. His claims against the insurers will not be mooted by the outcome of the arbitration with Fidelity. And since Passmore's claims against Fidelity will be resolved in an arbitral forum, there is little chance that the court of appeals will be called upon to consider the same case a second time. Nor is there any counterclaim that could result in a setoff. All the relevant factors favor entry of final judgment on Passmore's claims against the insurance company defendants. *See Gen. Acquisition*, 23 F.3d at 1030 (citations omitted). And since the separate

claim against Fidelity will be decided separately by an arbitrator, severing the claims adjudicated by the Court is desirable.

## III.

The magistrate judge correctly concluded that the plaintiff failed to plead viable claims against the defendants and that defendant Fidelity Brokerage Services properly and timely invoked an arbitration clause in its agreements with the plaintiff. Any further proposed amendments to the plaintiff's pleadings would be futile. The plaintiff's objections to the magistrate judge's report and recommendation do not have merit.

Accordingly, it is **ORDERED** that the magistrate judge's report and recommendation issued (ECF No. 21) is **ADOPTED**, and the plaintiff's objections (ECF Nos. 22, 23, 24, 27, 28, 29) are **OVERRULED**.

It is further **ORDERED** that the motion to dismiss by defendants Berkshire Hathaway Specialty Insurance Company and Federal Insurance Company (ECF No. 14) is **GRANTED**, and the amended complaint against them is **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that final judgement under Federal Rule of Civil Procedure 54(b) will enter on the plaintiff's claims against defendants Berkshire Hathaway Specialty Insurance Company and Federal Insurance Company.

It is further **ORDERED** that the motion by defendant Fidelity Brokerage Services, LLC to compel arbitration (ECF No. 15) is **GRANTED**.

It is further **ORDERED** that the dispute between the plaintiff and defendant Fidelity Brokerage Services, LLC shall be submitted to arbitration in accordance with the contract.

It is further **ORDERED** that to avoid administrative difficulties, the Clerk of Court shall **CLOSE** this case for statistical purposes only.  Nothing in this order or in the related docket entry shall be considered a dismissal of this matter as to defendant Fidelity Brokerage Services, LLC.

It is further **ORDERED** that either party may apply to the Court to reopen the matter for the purpose of enforcing, confirming, or vacating, as appropriate, the arbitral award.

It is further **ORDERED** that this Court shall retain jurisdiction to review and enforce or vacate the arbitral award.

          s/David M. Lawson  
          DAVID M. LAWSON  
          United States District Judge

Dated:   February 24, 2025